# EXHIBIT 1

Marshall, Calvin v Lovelace (ED 2:23-cv-11623)

Affidavit of Richard Russell & Attachments

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

CALVIN MARSHALL #732012
 aka Calvin Marshall Sewell, Jr.,

No. 2:23-cv-11623

    Plaintiff,

HON. LAURIE J. MICHELSON

v

MAG. JUDGE KIMBERLY G. ALTMAN

LINDA LOVELACE, *et al.*,

    Defendants.
_____/

## AFFIDAVIT OF RICHARD RUSSELL

I, Richard Russell, being duly sworn, depose and say as follows:

1. I am presently the Manager of the Grievance Section in the Office of Legal Affairs (OLA) of the Michigan Department of Corrections (MDOC), with my office in Lansing, Michigan. I have held this position since May 1, 2011.

2. If sworn as a witness, I can testify competently and with personal knowledge to the facts contained within this affidavit.

3. MDOC Policy Directive (PD) 03.02.130, "Prisoner/Parolee Grievances" sets forth the three-step grievance process by which a prisoner can seek redress for most alleged violations of policy and procedure or unsatisfactory conditions of confinement. The September 25, 2023, version of PD 03.02.130 is currently in effect, and the March 18, 2019, version was in effect in 2022 (ECF No. 27-2). MDOC Operating Procedure (OP) 03.02.130, "Prisoner/Parolee Grievances" is issued under PD 03.02.130 and lists the steps of the grievance process. OP 03.02.130, which is readily available at the facility libraries, is attached. (Att. A.)

1

4. The OLA Grievance Section processes Step III grievance appeals as defined in PD 03.02.130 ¶¶ O, HH, and II (ECF No. 27-2, PageID.140 & 144). As the Manager of the OLA Grievance Section, my duties include the oversight of the Step III appeals process.

5. The OLA Grievance Section does not process Step I grievances or Step II grievance appeals. Rather, Step I grievances and Step II appeals are processed by the Grievance Coordinators at the facilities where the claims being grieved arose. Under PD 03.02.130 ¶ O, the warden at each facility designates the Grievance Coordinator or Coordinators at Steps I and II (ECF No. 27-2, PageID.140), and the warden has the authority to designate the same individual as the Grievance Coordinator at both steps.

6. I am not in the supervisory chain of command for any of the Grievance Coordinators at any of the facilities. Rather, the chain of command for a Grievance Coordinator runs through facility administrators and ends with the warden. As neither the OLA Grievance Section nor I am involved in processing Step I grievances or Step II appeals, any issues with Step I grievances or Step II appeals must be raised at the respective facility—first to the Grievance Coordinator and then up the Grievance Coordinator's chain of command. Relatedly, the OLA Grievance Section does not respond to prisoner inquiries regarding Step I grievances or Step II appeals, as doing so would be outside of the grievance process.

7. For a Step III submission to be considered complete, it must include the Step I grievance, the Step I response, the Step II appeal, the Step II response,

2

and the Step III appeal. Step III submissions which are untimely or incomplete are subject to rejection at Step III. Each complete Step III submission received would have been assigned a grievance identifier at Step I. This grievance identifier would consist of the facility's three-letter abbreviation, the year of the grievance's filing, the month of the grievance's filing, a number unique to each grievance, and the grievance category code; the grievance identifier is often abbreviated using the facility abbreviation and the unique number.

8. When my office receives a Step III submission, it is logged into the Step III database (under its grievance identifier when provided) and assigned to a Grievance Specialist for processing. Before addressing the merits of a Step III appeal, the Grievance Specialist must first determine whether the grievance had been rejected at an earlier step and whether there are any reasons for rejection at Step III. If the grievance had been rejected at an earlier step and the reasons for that rejection are valid, then the rejection is affirmed and the merits of the grievance are not reviewed. If the grievance had not been rejected at an earlier step and there are reasons for rejection at Step III, then the appeal is rejected (at Step III) and the merits of the grievance are not reviewed. If the grievance had not been rejected at an earlier step and the Step III appeal was submitted pursuant to policy, the Grievance Specialist reviews the Step I and II decisions on the merits and then either upholds the decisions by denying the appeal or overturns the decisions by granting the appeal and explaining the basis for granting the appeal. Upon reaching a Step III determination, the Grievance Specialist enters that information

3

into the Step III database and the system generates a response based upon the grievance code and the information in the database.

9. My office retains a copy of a processed Step III submission subject to the relevant retention schedule: a digital copy is made of all documents included in the Step III submission and filed under its grievance identifier. When my office produces a Step III submission, it produces a digital copy of all documents included in the Step III submission; if a Step III submission produced by my office does not contain a document from a previous step, it is because the grievant did not include that document in the Step III submission.

10. It is the prisoner's responsibility to send the Step III submission by the proper channels and with sufficient postage, when necessary, so that my office receives the submission in a timely manner. It is also the prisoner's responsibility to follow up with my office if the prisoner has reason to believe that my office did not receive a Step III submission. Relatedly, because my office generally responds to Step III submissions within 60 days as set forth in PD 03.02.130 ¶ II (ECF No. 27-2, PageID.144), it is the prisoner's responsibility to follow up with my office if the prisoner does not receive a response within a few weeks of that time-period.

11. Although my office generally responds to Step III submissions within 60 days, the policy does not mandate that my office must respond within 60 days or that, for the purposes of exhaustion, the Step III process is considered completed after 60 days. This is because PD 03.02.130 requires that the grievance process be completed through all three steps before it can be considered exhausted.

12. In preparation for this affidavit, I reviewed Plaintiff Calvin Marshall's (#732012) Step III Grievance Report (ECF No. 27-3, PageID.149); his Step III submission for JCF-23-05-0891-27b (JCF-891) (ECF No. 41, PageID.150–155); and his December 10, 2024, reply (ECF No. 36).

13. In the Step III submission for JCF-891, Marshall included a letter addressed to me alleging that the facility Grievance Coordinator failed to respond to his grievances (ECF No. 27-3, PageID.155). As stated above, my office processes Step III appeals and does not have any role in the processing of Step I grievances. Accordingly, my office processed and responded to the Step III submission, and did not respond to the allegations in Marshall's letter (ECF No. 27-3, PageID.150).

14. PD 03.02.130 ¶ F provides that a grievant may file a grievance over alleged violations of the grievance policy itself (ECF No. 27-2, PageID.138). Thus, if Marshall believes that the facility Grievance Coordinator failed to respond to his grievances, he could have pursued a grievance on this issue, and he would start the process by raising the issue to the Grievance Coordinator or an appropriate staff member such as the Grievance Coordinator's supervisor (Ex. 1 ¶ 1 (pg. 1)).

15. The documents referenced in this affidavit are records of regularly conducted activity of the MDOC. The records were made at or near the time of the occurrences reflected, by a person with knowledge of those matters, or from information transmitted by a person with knowledge of those matters. These documents are kept in the regular course of business of the MDOC. Any copy of

these records attached to or accompanying this affidavit are true and accurate copies of the original records.

AFFIANT SAYS NOTHING FURTHER.

"I CERTIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND ACCURATE."

Date: December 18, 2024

*[signature]*

Richard D. Russell
Grievance Section Manager
Office of Legal Affairs
Michigan Department of Corrections

*[signature]*

NICOLE WILLSON
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires August 24, 2029

6